## DELAWARE, L. & W. R. CO. v. FRANK et al.

(Circuit Court, W. D. New York. August 26, 1901.)

No. 131.

1. **CARRIERS OF PASSENGERS—SPECIAL TICKETS—CONTRACT PROHIBITING TRANSFER.**

A common carrier has a right to issue and sell special tickets at a reduced rate of fare in consideration of the purchaser's agreement to certain conditions and limitations contained therein, among which it may be stipulated that the ticket shall not be transferred, and the use of such a ticket by another to whom it has been transferred in violation of the contract is an actionable wrong.

2. **SAME—CONTRACT MADE BY TICKET—INTERFERENCE WITH PERFORMANCE BY THIRD PARTIES.**

A railroad ticket broker who induces the purchaser of a special ticket, in which he has agreed, for a valuable consideration, not to transfer the same. to violate such agreement by selling the return portion of the ticket for the purpose of having it used by another, is guilty of an actionable interference with the performance of the contract.

3. **FEDERAL COURTS—PARTIES TO SUIT IN EQUITY—DISMISSAL AS TO CERTAIN DEFENDANTS.**

A federal court may dismiss a suit as against defendants between whom and the complainant the requisite diversity of citizenship does not exist, and retain it as to remaining defendants over whom it has jurisdiction, where the defendants dismissed are not indispensable parties, and their dismissal will not prejudice the rights of the others.

4. **INJUNCTION—PARTIES—JOINDER OF DEFENDANTS.**

In a suit by a railroad company for an injunction to restrain the purchase from passengers of partly-used tickets, nontransferable by their terms, and their resale for use in violation of the contract contained therein, where different brokers are engaged in dealing in the same class of tickets, all or any number of them may be joined as defendants.

5. **JURISDICTION OF FEDERAL COURTS—AMOUNT IN CONTROVERSY—SUIT FOR INJUNCTION.**

In a suit for an injunction the amount involved for the purpose of determining the jurisdiction of a federal court is the value of the right to be protected, or the extent of the injury to be prevented, by the injunction.[1]

6. **INJUNCTION—GROUNDS—INADEQUACY OF LEGAL REMEDY.**

A court of equity has jurisdiction of a suit to enjoin wrongful acts by defendants where the complainant's legal remedy involves numerous actions against irresponsible defendants, to recover small sums, in which the damages would not be clearly susceptible of proof, and which, if successful, would not result in any practical benefit to complainant.

7. **EQUITY—RIGHT TO INVOKE JURISDICTION—PROTECTION OF CONTRACTS ARISING OUT OF UNLAWFUL COMBINATION.**

In a suit by a railroad company to enjoin the defendants, who were ticket brokers, from dealing in special tickets issued by complainant on account of the Pan-American Exposition, which were by their terms nontransferable, it appeared from the showing made on a motion for a preliminary injunction that complainant was a member of a combination known as the "Trunk Line Association," formed by a number of railroads operating in different states for the purpose of preventing competition; that the passenger receipts of all such roads were pooled and divided on an agreed basis; and that the special rates made on account of the Exposition were fixed, and the terms of the tickets which were the basis of the suit prescribed, by such association through its passenger committee. *Held*, that such combination was illegal, as in violation

---

[1] Jurisdiction as affected by amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Shoe Co. v. Roper, 36 C. C. A. 459.

of the federal anti-trust law (26 Stat. 209), and that complainant could not invoke the aid of a federal court of equity for the protection of rights claimed under contracts which were the direct result and evidence of such unlawful combination.

In Equity. On motion for preliminary injunction.

Rogers, Locke & Milburn, for complainant.

Roberts, Becker, Messer & Groat, Laughlin & Ewell, Louis L. Ullman, and George F. Schultz (Tracy C. Becker and Louis Marshal, of counsel), for defendants.

HAZEL, District Judge. The injunctive relief of this court is invoked by the complainant on the ground of diverse citizenship, and on the further ground that, by the wrongful and fraudulent action and threatened continuance of the wrongful and fraudulent sale of special coach excursion tickets, account Pan-American Exposition, by the defendants, the complainant is damaged far in excess of the sum of $2,000. The complainant is a citizen of Pennsylvania. The bill alleges that the complainant believes the defendants are citizens of New York. A restraining order was heretofore allowed on the bill and accompanying affidavits, with an order to show cause why an injunction pendente lite should not be granted. Sixty-one defendants are proceeded against, many of them under the name of John Doe. By the bill it is claimed that the complainant railroad corporation is greatly wronged and damaged by the fraudulent and unlawful acts of the defendants, who are railroad ticket brokers engaged in business at Buffalo, N. Y. After reciting that the complainant operates a railroad for the carriage of passengers and freight for hire between Hoboken, N. J., and Buffalo, N. Y., and branch lines connecting with its main line and various other railroad lines with which it interchanges freight and traffic, the bill alleges that there is now being held in the city of Buffalo, within the jurisdiction of this court, the Pan-American Exposition; that, shortly before the opening of the Exposition, application was made by the officers thereof to the complainant and other railway companies connecting with it, to reduce their usual and ordinary rate of fare charged for passenger transportation from points along their lines to Buffalo and return to the initial point. To this request, it is alleged, complainant consented, and thereafter caused to be sold at its various stations tickets for special round trips and excursions to Buffalo at greatly reduced rates. The bill further alleges that, in consideration of such reduced rates, such tickets provide that the same shall not be transferable nor be valid or accepted for transportation in the hands of any person other than the original purchaser; that the same shall be good for only a specified number of days from the date of sale stamped thereon, and before being presented for return passage shall be stamped by a validating agent at Buffalo not later than the day canceled thereon,—that being the day on which said ticket shall be used for return to the initial point, and then to be used by continuous passage on the same train. The ticket has printed on its face the words, "Special Excursion Ticket, Account Pan-American Exposition." The conditions as above set

forth are printed thereon, and the purchaser is required to subscribe to the following contract:

"In consideration of the reduced fare at which this ticket is sold, I. the purchaser, hereby accept and agree to be governed by all the conditions as stated in the above contract."

It is further alleged that the New York Central & Hudson River Railroad Company and the West Shore Railroad Company, connecting roads, have issued like tickets, which are good in part over complainant's road. The bill then alleges broadly that defendants are engaged as ticket brokers or ticket scalpers at Buffalo, and in the conduct of their business procure from the original purchasers, and other persons in many instances, the return portions of such tickets purchased by them from Buffalo to the initial point, and that, when the same are procured, such tickets are sold to other persons, who, by falsely impersonating the original purchaser before the validating agent of complainant, and signing the original purchaser's name to such ticket, are enabled to use such tickets for transportation over complainant's railroad. It is further alleged that defendants, by billboards and placards placed over and in front of their various offices, give notice that they buy and sell such tickets at cut rates; that they employ solicitors to intercept persons originally purchasing such Pan-American special-rate tickets, on their arrival at Buffalo, for the purpose of purchasing the return portions of such tickets, and that such tickets are disposed of to the traveling public; that the purchaser is instructed how to impersonate the original purchaser so as to escape detection. It is also charged that forgeries and other fraudulent and wrongful acts are committed by the defendants, the original purchaser of the ticket, and the purchaser from the defendants, for the purpose of hindering and impeding the complainant in its business, and to deprive it of the sale of tickets at the regular and ordinary rate from Buffalo to other points along its line, and to defraud it out of the amount of the fare which the person fraudulently using such ticket would otherwise pay for such transportation. It is also alleged that the defendants are pecuniarily irresponsible, that it is impossible for complainant to establish from which of the defendants fraudulent tickets are purchased, and that no practicable means exist by which the frauds of the defendants can be detected or prevented. The bill also alleges that the defendants, or many of them, are united in an association and band and conspire together to carry on the business of purchasing and disposing of said tickets, and that complainant's business is thereby greatly injured, and its earnings and profits lessened. At the time of the hearing on the motion to continue the injunction, 36 defendants appeared, by counsel, specially, to object to the jurisdiction of the court. Other defendants appeared in person. The ground of objection is that a diversity of citizenship does not exist between complainant and many of the defendants. Affidavits of two defendants were read and filed, showing that they are citizens of the same state as the complainant. Affidavits of other defendants were also read and filed, from which it satisfactorily appears that such defendants are not citizens of New

York. The affidavits denying diversity of citizenship are, upon this application, treated as a plea to the jurisdiction of the court to grant the provisional relief sought.

Defendants contend (1) that the bill cannot be dismissed as to any defendant not within the jurisdiction of the court without a dismissal of the bill as to all defendants; (2) that the bill does not state a cause of action, either in law or equity, against any of the defendants; (3) that complainant is engaged in an open violation of the anti-trust law of congress in maintaining in combination with other railroads a rate of fare to the Exposition and return to the initial point; (4) that the bill ought to be dismissed on the further ground that its essential allegations and those of the accompanying affidavits are made on information and belief, or by a person who has no actual knowledge of the facts alleged.

This application is based mainly upon the bill of complaint. The bill, however, is positive in many of its allegations, and being verified, may therefore be considered an affidavit as a basis for provisional remedy. Hecker v. Mayor, etc., 28 How. Prac. 212, and cases cited. The defendants' counsel contend that the allegations of complainant's papers are not made in such a direct and positive manner that the writ of injunction may issue. An examination of the averments of the bill and the affidavits submitted convinces me, however, that this objection is untenable. I deem it quite uniformly settled by the courts of the United States and by the state courts, where the question has been considered, that a common carrier has a right to issue and sell tickets along and over its line or road at reduced rate of fare in consideration of the purchaser's agreement to on his part conform to conditions and stipulations expressed by the ticket and furnished to the purchaser. The conditions to which the purchaser of complainant's ticket assented were, substantially, that the ticket should not be transferred to another for use; that the purchaser would present the return portion of the ticket for use within a specified time; that he would affix his signature in the presence of the joint agent on the reverse side of the return portion on or before the day limited for return use. It was held in the case of Railroad Co. v. McConnell (C. C.) 82 Fed. 65, that the right to make and issue a special form of ticket, furnishing a reduced rate of fare, and thereby aiding in a great public purpose, is fully recognized both at common law and by legislation, and that the use of one of these tickets in violation of the contract by a person other than the original purchaser is a fraud upon the common carrier. It follows that the right to impose conditions upon its passengers in consideration of the acceptance of a ticket at reduced fare carries with it a right to limit the ticket as to time, the train on which it is to be used, and to prohibit a sale and transfer thereof to another person. Defendants admit a right of limitation as to time, restrictions as to train to be used, and that a railroad company may require the ticket issued by it to be stamped. They insist, however, that, as the ticket is property, a prohibition of its sale is equivalent to depriving its owner of acquired property; that he obtains by the purchase thereof an assignable right, and also the right to authorize another to indorse his name

on the ticket whenever it is required by the contract of purchase. I cannot accept this view. No substantial reason presents itself why a purchaser of transportation from a common carrier in consideration of the reduction of fare from the ordinary rate should not abide faithfully by reasonable restrictions and limitations contained in the contract of purchase. While a person may obtain an assignable right in a railroad ticket, yet, when the right obtained is curtailed or limited, the purchasing party, assenting to the limitation for a valuable consideration, must hold his obligation as inviolate as he has a right to hold that of the railroad company. In consideration of the price paid for the ticket the purchaser obtains the right of passage, and as well obligates the common carrier to other responsibilities. Where a right of passage is obtained by special contract and at a reduced rate of fare, carrying with it restrictions and limitations, the purchaser receives a consideration which makes it obligatory on him to in good faith carry out his agreement. A violation of the contract of transportation by the common carrier lays it open to legal liabilities and consequent remedies. The contract is binding on both. If the time in which a return part of the ticket may be used has lapsed, the purchaser of the ticket has failed to accept a right guaranteed him by the contract. Failure to use the return portion of the ticket by him must be deemed his own voluntary act or neglect. The common carrier is required to transport the purchaser on his return without additional compensation. It may be required to provide for his use such comfort and conveniences as are usually allotted to the traveling public. This question was only recently before the Fourth department, appellate division of the supreme court of New York, People v. Caldwell, 71 N. Y. Supp. 654. Justice McLennan, speaking for the court, said:

"We think the decision in the case of People ex rel. Tyroler v. Warden, 157 N. Y. 116, 51 N. E. 1006, 43 L. R. A. 264, 68 Am. St. Rep. 763, must be regarded as decisive of the proposition that it is not competent for the legislature to prohibit the purchase and sale of passage tickets over transportation lines when such sale is not in violation of any contract made with the transportation companies upon the sale of such tickets by them."

This was a case brought before the court on appeal from a final order in habeas corpus proceeding discharging the relator from arrest. The relator was arrested for violating an act of the legislature passed in 1901, which by its terms provided, in substance, that no person shall sell a passage ticket giving any right to a passage or conveyance upon any railroad train, unless it be an authorized agent of the company running such train, or unless he has received a certificate of authority therefor, in writing, from such company. The court followed a decision of the court of appeals (Tyroler v. Warden, supra) holding such a penal statute unconstitutional. It will be seen that the appellate division limited its decision, and interpreted the decision of the court of appeals, to tickets issued over railroad lines whenever such sale is not in violation of contractual obligations. It is clear that a limitation upon the use of a ticket as to time and its use by another than the original purchaser may be restricted and limited to the fair and true intendment of the contract. When, therefore, a subsequent purchaser of a ticket from a broker, who pur-

chased the ticket from the original purchaser, uses the same, he becomes liable to the railroad company wronged, in an action at law, for any damage sustained. No obligation exists on the railroad company to transport a passenger holding such a ticket. Mosher v. Railway Co., 127 U. S. 390, 8 Sup. Ct. 1324, 32 L. Ed. 249. It is equally clear that the interference of the ticket broker in inducing a person holding the return part of a ticket purchased by him from the railroad under special contract arrangements not to transfer or permit the use of such ticket by another person, in consideration of the sale of such ticket at a reduced rate of fare, in order to break the contract, is actionable. Angle v. Railway Co., 151 U. S. 1, 14 Sup. Ct. 240, 38 L. Ed. 55; Railroad Co. v. McConnell, supra. An examination of the authorities convinces me that it is quite well settled that jurisdiction may be retained over defendants as to whom a diversity of citizenship exists, and a dismissal of the complaint may, and in a proper case will, be permitted against defendants who are not found to be within the jurisdiction of the court, unless such defendants are indispensable to the entry of a decree against the remaining defendants, and when it may be done without prejudice. Horn v. Lockhart, 17 Wall. 570, 21 L. Ed. 657; Oxley Stave Co. v. Coopers' International Union of North America (C. C.) 72 Fed. 695; Mason v. Dullagham, 27 C. C. A. 296, 82 Fed. 689; Grove v. Grove (C. C.) 93 Fed. 865; Smith v. Oil Co., 30 C. C. A. 103, 86 Fed. 359.

The contention of counsel for defendants that the bill imperfectly and defectively charges fraudulent and wrongful acts by 61 defendants, rendering it impossible to separate any one of them or dismiss the bill as to any of them without injury and prejudice to the remaining defendants, is untenable. The defendants who are not diverse citizens from the complainant are not indispensable.

The question now arises, can this proceeding be maintained against the remaining defendants, and by a single bill? These objections are removed by the language of Judge Clark in the McConnell Case, where the facts are similar to the case at bar, at page 75, where he says:

"I think the defendants may properly be joined in one suit. Plaintiffs' business is the subject-matter in each bill, and the right claimed is exactly the same against all the defendants. The injury complained of is the same, and is being inflicted by defendants in the same method and at the same time."

The objection that the suit fails of jurisdiction because it is not shown that the defendants against whom the action may be continued have damaged complainant in a sum in excess of $2,000 is overruled. It has been frequently held that in a suit in equity, where an injunction is sought, the amount in dispute is not the amount in controversy, but the value of the object to be gained by the bill. In the case of Humes v. City of Ft. Smith (C. C.) 93 Fed. 862, where an objection was made to the jurisdiction of the court because the amount in controversy did not exceed the sum of $2,000, the court said:

"Jurisdiction is not determined in that way. Jurisdiction is determined by the value of the right to be protected, or the extent of the injury to be prevented, by the injunction."

A court of equity will not require a pursuit of a legal remedy which foreshadows annoyance, accompanied by uncertain results and multiplicity of suits, to recover small sums from irresponsible defendants, where, as in this case, the damages caused by the alleged wrongful acts are not clearly susceptible of proof, and where the legal remedy that is afforded falls short of being complete and efficient. Railroad Co. v. McConnell, supra; Insurance Co. v. Clunie (C. C.) 88 Fed. 167; Smith v. Bivens (C. C.) 56 Fed. 352; Smyth v. Ames, 169 U. S. 466, 18 Sup. Ct. 418, 42 L. Ed. 819; De Forest v. Thompson (C. C.) 40 Fed. 375. The complainant's papers, standing alone, disclose a proper case for the exercise of equitable relief.

I now come to consider a ground of objection to a preliminary injunction, not free from difficulty. I have given the subject most serious consideration, and am conscious of the great importance and far-reaching effect that its decision involves. Defendants contend that the complainant, in determining on the reduced rate of fare for a round-trip ticket on its road during the continuance of the Pan-American Exposition at Buffalo, ending with October 31, 1901, in conjunction with other railroad lines having facilities for transportation of passengers over its road to Buffalo, violated the provision of the act of congress of July 2, 1890, by which it is provided:

"Every contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce among the several states, or with foreign nations, is hereby declared to be illegal." 26 Stat. 209.

It appears from the affidavit of Mr. Lansing· That the complainant is a party to a combination which is engaged in pooling railroad rates and in fixing fares for railroad transportation in order to avoid competition between the several lines constituting the association known and distinguished as the "Trunk Line Association." This association has among its membership a constituted committee known as the "Trunk Line Committee." It is claimed that its membership consists of the complainant and eight other railroad corporations, citizens of different states, operating in the Middle states. The Trunk Line Association acts through a trunk line passenger committee, which is composed of the general passenger agents of the principal railroads operating in the territory reached by the several railroads which they represent. That the special Pan-American tickets referred to in the bill of complaint have been issued pursuant to such combination and conspiracy. That the rates and conditions of the tickets were previously arranged, and are a product of this combination organized to stifle competition in railroad rates. It further appears that the complainant and other railroads in combination are pooling the first and second class passenger business of their respective roads upon an agreed division of the receipts. The representative of the joint agency testified before the police court of the city of Buffalo in a proceeding brought against a ticket broker. It appears from his testimony, which is produced by the defendants, that the rates are fixed by the association, and that the complainant is a member thereof; that he is employed by this association in conjunction with the Central Passenger Association. The defendants' affidavits and exhibits have not been questioned or controverted on

the part of complainant. They stand admitted, therefore, upon this application for a continuance of the injunction. Defendants charge that the very ticket which is the ground of this application is the result and the evidence of an unlawful agreement between the different railroads composing the Trunk Line Association. This is not denied. The court cannot at this time pass upon the existence of this unlawful agreement, other thán as it appears in the papers submitted. Were this at final hearing, when all the facts known to the complainant were divulged, the court might not be bound to seemingly protect the defendants in the pursuit of their nefarious practices, for such they admittedly are. The defendants do not deny the charges of wrongdoing. A court of equity would therefore be bound to raise its arm in defense of a complainant suffering wrongs which could be properly righted by the exercise of its power. But can the aid of a federal tribunal be invoked to protect the complainant in the issuance of a ticket over its railroad, which, as far as it appears to the court, is the culmination as well as the evidence of an agreement between railroad corporations specifically forbidden by an act of congress which has been sustained by the supreme court of the United States? U. S. v. Trans-Missouri Freight Ass'n, 166 U. S. 290, 17 Sup. Ct. 540, 41 L. Ed. 1007; U. S. v. Joint Traffic Ass'n, 171 U. S. 505, 19 Sup. Ct. 25, 43 L. Ed. 259. The complainant contends that this charge made by the defendants does not avail, as the wrongdoing, if any, exists, does not relate to the subject-matter. I am not convinced as to the soundness of this contention. Can the railroad complainant conspire unlawfully to fix rates, and then come into a court of equity and invoke its aid to protect those rates which are represented by the ticket presented to the court, and which is wrongfully used by the defendants? The evil practice which stands admitted by the papers is the very practice in which the court's protection is invoked. As was well said in Insurance Co. v. Clunie (C. C.) 88 Fed. 170:

"The maxim that he who comes into equity must come with clean hands has its limitations. It does not apply to every unconscientious act or inequitable conduct on the part of the complainants. The inequity which deprives a suitor of a right to justice in a court of equity is not general iniquitous conduct, unconnected with the act of the defendant which the complaining party states as his ground or cause of action, but it must be evil practice or wrong conduct in the particular matter or transaction in respect to which judicial protection or redress is sought."

See, also, Beach, Mod. Eq. Jur. 14–16; Pom. Eq. Jur. 397, 398; Beck v. Real Estate Co., 12 C. C. A. 497, 65 Fed. 30; Weiss v. Herlihy, 23 App. Div. 608, 49 N. Y. Supp. 81; Sinsheimer v. Garment Workers, 77 Hun, 215, 28 N. Y. Supp. 321.

In the Sinsheimer Case an injunction was sought by plaintiffs, who were a combination of clothing manufacturers formed for mutual protection from the demands for higher wages of their employés, who were also organized for protection and for advancing their wages. The court said:

"Under the circumstances disclosed by the papers in this case, if the defendants were guilty of any violation of law, the plaintiffs were certainly equally implicated, and under this condition of affairs it is difficult to see

how they would have a right to the intervention of a court of equity. In dealing with questions of this nature the court should be studious to see that the rights of all parties are protected, and that the forms of law should not be permitted to be used on behalf of one party against another, when the party seeking the intervention of the court has been endeavoring to secure his ends by means similar to those which he seeks to enjoin on the part of his antagonist."

The wrongdoing of complainant, admitted by the papers, is not remote. It has given birth to the combination whose tickets have been wrongfully diverted by the defendants. This court has no sympathy with, nor would it lend its aid willingly to, those indulging in practices admitted by the defendants. But, sitting as a court of equity, it is bound by those rules which are the very foundation of that branch of our jurisprudence. The complainant does not come before the court with clean hands in the transaction complained of. The court can, therefore, not grant it equitable relief upon the state of facts before it at this time. The complainant must therefore be relegated to its remedies at law, and the injunction vacated. Let an order be entered accordingly.

## On Rehearing.
### (October 14, 1901.)

Motion for reargument on notice to defendants was heard by me September 30, 1901. Affidavits were read in behalf of complainant, denying the charge of violation of the anti-trust act, the alleged pooling of business, and the apportionment or division of money received by various railroads for sale by them of reduced-rate Pan-American tickets. Defendants, in reply, read additional affidavits, corroborative of their charge of iniquitous conduct by the complainant with respect to the tickets in question. Answers in behalf of 38 defendants were served and filed, denying the commission of the wrongful acts charged in the complaint.

Important and difficult questions of law are involved in the determination of this motion. A disposition of it on the affidavits presented may fail of having the facts carefully examined and deliberately heard. The original motion for injunction was denied, for the reasons stated in the opinion of the court filed August 26, 1901. The Pan-American Exposition, on account of which the reduced-rate ticket was issued by the complainant and other roads associated with it, will close its gates on October 31st,—within 17 days. It is doubtful whether the necessity for immediate protection from alleged wrongful acts now exists. Inasmuch as the defendants have read additional affidavits and filed an answer corroborative of the charge of the existence of a combination in violation of law, the issues now raised ought not at this time to be disposed of summarily.

Motion for reargument denied as to defendants who have appeared and answered. Defendants who have not answered, of course, may be proceeded against in accordance with the ordinary rules of equity procedure.