MACFARLANE & CO., LIMITED, a corporation, et als. v. WILLIAM H. WRIGHT, as Treasurer of the Territory of Hawaii.

DECIDED: FEBRUARY 13, 1902.

1. The Circuit Court will assume jurisdiction in equity originally and consider an application for an injunction where the bill of complainants alleges both the statutory amount of pecuniary injury and the fact that the Act of the Legislature of the Territory of Hawaii complained of is in violation of the Constitution of the United States, and no plea to the jurisdiction being raised on the part of the defendant.

.2. Chapter 46 of the Session Laws of 1888, now known as Part V. of Chapter 41 of the Penal Laws of the Hawaiian Islands, 1897, entitled "Sale of Malt Liquors," is unconstitutional and void, and in violation of Subdivisions 1 and 3 of Section 8 of Article 1, and Subdivision 1, Section 2 of Article IV of the Constitution of the United States.

3. Nothing is better settled than that the Legislature of a State or a Territory cannot constitutionally enact laws discriminating in favor of its own citizens and against the citizens of another State or Territory of the United States; and where a territorial statute provides for the issuance of a license for the brewing of malted liquors in the District of Honolulu, Island of Oahu, and a license was issued and malted liquors brewed thereunder; and where said statute provided for the issuance of licenses to individuals to sell "by the glass, or in any other quantity less than five gallons," beers manufactured in Honolulu, upon the payment of an annual tax of $250, but with the proviso that such individual will not sell or dispose of on the premises for which he is licensed "any......
malt liquors or spirits of any description whatever........and also that he will not store, or allow to be stored, on the premises for which he is licensed, any.........malt liquors........save such beers manufactured in Honolulu;" and where a number of licenses were issued to different individuals under said Act; and where it further appeared that under the provisions of Sections

434, 5 and 6 of the Penal Laws of Hawaii, 1897, one of the complainants is obliged to pay an annual license tax of $1,000 for the privilege of selling and disposing of "any spirituous liquors by the glass or bottle" on his premises, under which one of the complainants is selling foreign malted liquors and beers; and where it appeared that while all of the complainants did not establish a clear pecuniary loss, but that two of said complainants showed such a falling off of sales since the issuance of the licenses to sell the home brewed beer as to meet the requirements of the statute in relation to the amount of damage required to give a Circuit Court jurisdiction in this class of cases; upon an application for an injunction to restrain the Treasurer of the Territory from issuing any further licenses under said Act relative to home-manufactured beer,

*Held,* (1) that the injury sustained by complainants is a continuing one that cannot be estimated at the time of the hearing in dollars and cents; (2) that the injunction should issue on the ground that the Act providing for the levying of an annual tax of $250 for the privilege of selling home-manufactured beer, to the exclusion of all other spirituous or malted liquors, under said license, is a discrimination in favor of the citizens of the Territory of Hawaii, and against the manufacturers of foreign-brewed beers, in violation of the provisions of Subdivisions 1 and 3 of Section 8 of Article 1, and Subdivision 1 of Section 2 of Article IV of the Constitution of the United States, and is therefore unconstitutional and void.

In Equity. 〔 Application for injunction to restrain issuance of certain liquor licenses.

*Robertson & Wilder* and *J. J. Dunne,* for plaintiffs.
*Hatch & Silliman,* for defendant.

This is an application for an injunction prayed for by the plaintiffs against William H. Wright, Treasurer of the Territory of Hawaii, to restrain him from the further issuance of certain beer licenses, so called which it is claimed were issued under the provisions of Chapter 46 of the Session Laws of 1888, said Chapter 46 being part V. of Chapter 41 of the "Penal Laws of the Hawaiian Islands 1897" entitled "Sale of Malt Liquors", also that this Court declare said Statute unconstitutional and void.

The facts appear to be these:

The plaintiffs, Macfarlane & Co., Limited, Peacock & Co., Limited, Ed. Hoffschlaeger & Co., Limited, and St. C. Sayers, are all engaged in the sale of liquors under what are known as "Dealers' Licenses". These licenses are issued under the provisions of Sections 11, 12, 13 of Chapter 44 of the Session Laws of 1882, now known as Sections 431, 432 and 433 of the "Penal Laws of the Hawaiian Islands, 1897." For the issuance to them of said "Dealers' Licenses", each of the plaintiffs last named pays a yearly tax or fee of $500, and under said license each of them is entitled to sell "ardent spirits in quantities not less than one gallon, wines, ales and other liquors containing alcohol in bottles and in quantities of not less than one dozen bottles; provided that the same and no part thereof shall be drank or used on the premises where they are sold or in any other house or premises contiguous thereto procured or rented for that purpose by the party holding such license.........under the penalty of forfeiting his license and incurring the penalty of the law prescribed on his bond."

The plaintiff, H. Hackfeld & Co., Limited, is a corporation doing business under what is known as a "Wholesaler's License", which license was issued under the provisions of Sections 8, 9 and 10 of Chapter 44 of the Session Laws of 1882, now known as Sections 428, 429 and 430 of the aforesaid Penal Laws, and for which said license said plaintiff pays $500 annually for the privilege of the "wholesale vending of spirituous liquors in quantities not less than the packages imported and in no other manner; provided that no part thereof shall be drank on the premises where they are sold."

While the remaining plaintiff, Lawrence H. Dee, is doing a retail liquor business under a so-called "Retailers' License" issued under the provisions of Sections 14, 15 and 16 of Chapter 44 of the said Session Laws of 1882, now known as Sections 434, 435 and 436 of the aforesaid Penal Laws, and for which license the said Dee pays a tax of one thousand dollars per annum; thereby securing the privilege of "selling and disposing of any spirituous liquors by the glass or bottle on the premises therein specified between the hours of half past five o'clock in

the morning and half past eleven o'clock at night except Sunday."

Under the license aforesaid, each of the plaintiffs have been and are now importing and selling, in addition to other spirituous liquors, certain beer and malt liquors which are manfactured in various states of the Union; that said plaintiffs are and each of them is an agent in this territory for certain persons and corporations engaged in the manufacture and brewing of said beer and other malt liquors outside of the Territory of Hawaii, and in various states of the United States to wit:

The plaintiff, Macfarlane & Co., Limited, is the agent for the Val Blatz Brewing Co. of Milwaukee in the state of Wisconsin and the John Wieland Brewing Co. of San Francisco in the state of California; the plaintiff, H. Hackfeld & Co., Limited, is the agent for the Anheuser Busch Brewing Co. of St. Louis in the state of Missouri; the plaintiff, W. C. Peacock & Co., Limited, is the agent for the Pabst Brewing Co. of Milwaukee in the state of Wisconsin, American Brewing Co. in the city of St. Louis, state of Missouri and Buffalo Brewing Co. of Sacramento in the state of California; the plaintiff, Ed. Hoffschlaeger & Co., Limited, is the agent for the Fred. Miller Brewing Co. of Milwaukee in the state of Wisconsin; the plaintiff, St. C. Sayers, is the agent for the Seattle Brewing & Malt Co. of the city of Seattle in the State of Washington, while the plaintiff, Lawrence H. Dee, is the agent for the Capital Brewing Co. of Olympia, in the state of Washington.

It further appears, that long after the passage of these Sections of Chapter 44 of the Session Laws of 1882, (now embodied in Sections 428-9, 430, 431, 432, 433, 434, 435 and 436 of the Penal Laws of the Hawaiian Islands, 1897) and under which Sections the licenses were issued to complainants as aforesaid, an Act was passed by the Legislature of the kingdom of Hawaii (Session Laws of 1886) now known as Part IV. of the aforesaid Penal Laws, wherein it is provided by Section 472 thereof, that—

"The Minister of the Interior (now the Treasurer) is hereby

authorized to issue a license for the brewing of malt liquors in the District of Honolulu on the Island of Oahu, for a term of fifteen years. . . . . . . . . . .''

. That thereafter an Act was passed by the Legislature of the Kingdom of Hawaii (Session Laws of 1888) now embodied in Part V. (Sections 479 to 483 inclusive of Chapter 41 of the Penal Laws), entitled "An Act to specially license the retailing of malt liquors manufactured under the Act entitled an 'Act to license the brewing of malt liquors in the District of Honolulu.'" And Section 479 of said Part V. provided as follows:

"The Minister of the Interior (now the Treasurer) is hereby authorized to grant licenses for one year in this Republic to any person or persons making written application for the same, to sell by the glass or in any other quantity less than five gallons, malt liquors manufactured in Honolulu under Section 472 to 483 inclusive, upon receiving for each license, the sum of two hundred and fifty dollars."

While Section 481 prescribes that—

"Before receiving any license to sell malt liquors as above, the applicant shall file an approved bond with the Minister of the Interior (now the Treasurer) in the penalty of one thousand dollars conditioned:

". . . . . . . . . Second: That he will not sell or otherwise dispose of on the premises for which he is licensed any wines, malt liquors, or spirits of any description whatever; and also that he will not store or allow to be stored on the premises for which he is licensed, any wines, malt liquors or any spirits of any description whatsoever, except such beer manufactured in Honolulu and under the said above mentioned Sections." (Sections 472 to 478 inclusive), which latter Sections all provide regulations for the person who is to be given a license to brew the malted liquor in Honolulu.

While Section 482 gives to the Minister of the Interior (now the Treasurer) discretionary power to place such provisions in the license or the bond referred to in Section 481 as shall be necessary to the correct regulation of the business and premises licensed.

It was shown upon the hearing that no license was issued to any person to brew malted liquor in Honolulu, in accordance with the provisions of Section 472 hereinbefore referred to, until the 4th day of May, 1899, when such a license was issued to one A. Hocking "to brew malted liquors at Queen street in the District of Honolulu, Island of Oahu, Hawaiian Islands" for the term of two years and nine months from that date. That the Honolulu Brewery and Malting Company, Limited, organized pursuant to said license, began brewing some time in February or March, 1901, and the first output of its beer was on July 1, 1901. Simultaneously with the output of the brewery, to-wit, on said July 1, 1901 the defendant herein began the issuing of licenses under the Act referred to, to various parties, who upon paying the license fee of two hundred and fifty dollars for one year were given the privilege to "sell by the glass or in any other quantity less than five gallons, malt liquors manufactured in Honolulu." Said licenses containing a proviso that said malt liquor should be disposed of only "between the hours of six o'clock in the morning and eleven o'clock at night on every day except Sunday............(plaintiffs' Exhibit 1).

But as a condition precedent to the issuance of said license, each applicant was required to execute a bond in the penal sum of one thousand dollars  conditioned among other things as follows:

"......Second:  That he will not sell or otherwise dispose of on the premises for which he is licensed, any wines, malt liquors or spirits of any description whatever, and also that he will not store or allowed to be stored on the premises for which he is licensed, any wines, malt liquors or spirits of any description whatsoever except *such beer manufactured in Honolulu"* and under said above mentioned Act (the Act to license the brewing of malt liquors in Honolulu) Plaintiff's Exhibit 2.

In other words, said licensees are given the privilege of selling at retail, Honolulu manufactured beer under licenses, which are to be paid for at the rate of two hundred and fifty dollars per annum, upon condition that they do not either store or sell

upon the premises, any foreign manufactured beer or other spirits.

From the testimony of the defendant, W. H. Wright, it appears that twenty-five of these licenses were issued between July 1, 1901, and November 25th, 1901, and the testimony further shows that certain of the licensees are now doing business thereunder.

It further appears from the testimony of Mr. Wright, that before the commencement of these proceedings, the plaintiffs through Mr. Robertson, one of their attorneys, made a demand upon him for a license to sell foreign brewed beers for the same fee required under the law for a license to sell Honolulu brewed beer, to-wit: $250 per annum, and the said defendant testified that he refused to issue said license.

Thereafter, on November 19, 1901, application was made in writing by the complainants, through their attorneys, upon the said defendant, requesting the issuance to them of licenses to "sell beer by the glass and in any other quantity less than five gallons, under the provisions of Chapter 46 of the Session Laws of 1888 (Sections 479-483, Penal Laws), excepting therefrom that provision which prevents the sale and storing on the premises of malt liquors other than beer manufactured in Honolulu." Thereafter, on the 21st day of November, 1901, the said plaintiffs, through their attorneys, addressed another communication to the defendant, in which they complained of the fact that Chapter 46 of the Session Laws of 1888, was in conflict with the Constitution of the United States and void as discriminating in favor of local beer and against beer made on the mainland in regard to the amount of the license fee, and requested that he cease to issue any further licenses under the conditions imposed by said statute, to-wit: those conditions which prohibit the licensees from selling other beer than Honolulu beer; which said communication was acknowledged by the defendant in a letter dated November 26th, 1901, in which he states that "no more licenses will be issued for the time being."

No licenses, as demanded, were ever issued to the complainants or any one of them, as in the language of the defendant

in his answer on file herein, "in the exercise of the discretion vested in him, he refused to issue the licenses hereinabove requested and still refuses to issue the same."

While the real issue in this case is whether Chapter 46 of the Session Laws of 1888 (now part V., Chapter 41 of "The Penal Laws of the Hawaiian Islands, 1897"), is unconstitutional and void by reason of its discrimination against the beer products of the other states and territories of the United States, yet the jurisdiction of the Court on other grounds has been assailed upon the hearing, although no plea thereto was raised by defendant's answer.

In the matter of jurisdiction two questions are to be considered by the Court:

First: Is there a constitutional question involved in the case? and Second: Do the facts in the case show an amount of injury sufficient to enable the Court to assume and retain jurisdiction in accordance with the provisions of the law giving jurisdiction to Circuit Courts in certain cases?

Section 1 of the Act of 1888 (Vol. 25, Statutes of U. S., P. 434), amendatory of the Act of 1875, provides as follows:

"The Circuit Courts of the United States shall have original cognizance. . . . of all suits of a civil nature at common law ,or in equity where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of $2000, and arising under the Constitution or laws of the United States."

There is no doubt as to the bill of complainants showing upon its face a sufficient case for the Court to take jurisdiction originally, alleging as it does both the statutory amount of injury and the fact that the territorial statute complained of is in violation of the Constitution of the United States; and no plea having been filed on the part of the defendant to the jurisdiction. As was said by the Supreme Court of the United States in the case of *Hartog v. Memory,* 116 U. S. 588, parties cannot call upon the Court to go behind the record "except by a plea to the jurisdiction or some other appropriate form of proceeding. The case is not to be tried by the parties as if there was a plea to the jurisdiction when no such plea has been filed."

This is not an action at law. It is an application for an injunction and therefore within the equity jurisdiction of the Court. The injury complained of, if any be shown, is a continuing one, and it has been frequently held that in a suit in equity, where an injunction is asked for, the amount in dispute is not the amount in controversy, but rather the value of the object to be gained by the bill.

In the case of *Humes v. City of Ft. Smith*, 93 Fed. 857, 862, where an objection was made to the jurisdiction of the Court because the amount did not exceed the sum of two thousand dollars, the Court held that:

"The jurisdiction is not determined in that way. Jurisdiction is determined by the value of the right to be protected or the extent of the injury to be prevented by the injunction."

*Delaware L. & W. R. Co. v. Frank et al.*, 110 Fed. 689; *Interstate Bldg. & Loan Assn. v. Edgefield Hotel Co.*, 109 Fed. 692; *Nashville St. L. Ry. Co. v. McConnell*, 82 Fed. 65.

See also the case of *Haverhill Gaslight Co. v. Barker et al.*, 109 Fed. 694, where it was held that a Federal Court of equity has jurisdiction of a suit by a gas company against officers of a state to enjoin the threatened enforcement of an order made by defendants, under a statute requiring complainants to supply gas to customers at a rate which is alleged to be so unreasonably low that the enforcement of the order will result in depriving complainant of its rights under the Fourteenth Amendment, both on the ground of a prevention of a multiplicity of suits between complainant and its customers and because such suit is the most approved method of determining the constitutional questions involved.

"The dignity and value of the right assailed, and the power and authority of the source from which the assault proceeds are elements to be considered in the computation of damages if they are to be not only compensation for the direct loss inflicted, but a remedy and prevention for the greater wrong and injury involved in the apprehension of its repetition." *Barry v. Edmunds*, 116 U. S. 550.

And while it is true that the complainants did not all establish a clear pecuniary loss, yet it is apparent that each of them was injured in his individual right to free commerce in the infringement thereof, by this discriminating statute, and in addition to this common injury sustained by all, there was in the estimation of the Court, sufficient specific pecuniary loss shown by at least two of the complainants, to-wit: Peacock & Co. and L. H. Dee, in damage to each of them by reason of the falling off of sales since the issuance of the licenses to sell Honolulu brewed beer to meet the requirements of the statute in relation to the amount of damage involved in a suit to give this Court jurisdiction, and especially as it appears that this injury will be a continuing one, the amount of which cannot now be clearly estimated in dollars and cents.

It would seem apparent, therefore, that the jurisdiction is shown by at least two of the complainants.

"The general principle * * is that if several persons be joined in a suit in equity or admiralty, and have a common and individual interest, though separable as between themselves, the amount of their joint claims or liability will be the test of jurisdiction, but where their interests are distinct and they are joined for the sake of convenience only and because they form a class of parties whose rights or liabilities arose out of the same transactions or have relation to a common fund or mass of property sought to be administered, such distinct demands or liabilities cannot be aggregated together for the purpose of giving this Court jurisdiction by appeal, but each must stand or fall by itself alone." *Clay v. Field,* 138 U. S. 464; the same Court saying in the case of *Schwed v. Smith,* 106 U. S., P. 188:

"The theory is that, although the proceeding is in form but one suit, its legal effect is the same as though separate suits had been begun on each of the separate causes of action."

*Holt et al. v. Bergevin et al.,* 60 Fed. 1; *Putney v. Whitmire et al.,* 66 Fed. 385; *Nashville C. and St. L. Ry. Co. v. McConnell* 82 Fed. 65, 72-5.

To this question of jurisdiction there is another aspect besides that of the pecuniary nature already discussed, and that

is in relation to the infringement of the constitutional right of the plaintiffs "to all privileges and immunities" enjoyed by citizens of the territory, in the sale of foreign products within the territory, and their right to be free from all discriminating legislation.

Subdivision 1 of Section 8 of Article One of the Constitution of the United States prescribes that:

"All duties, imposts and excises shall be uniform throughout the United States;" Subdivision 3 of said Section 8 also providing, that Congress shall have power "to regulate commerce with foreign nations, and among the several states and with the Indian tribes."

While the so-called "Equal Rights Clause," Subdivision 1 of Section 2 of Article IV., of the Constitution provides that:

"The citizens of each state shall be entitled to all the privileges and immunities of the citizens in the several states."

Under the state of facts disclosed in this case, are the complainants, while selling the beers of the different persons and corporations, citizens of other states, for whom they respectively act as agents in Honolulu, on an equal footing in a free market with the manufacturers of home brewed beer?

Sections 479 to 483 of Part V., Chapter 41 of the Penal laws, and under which laws some twenty-five licenses were issued by the Treasurer of the Territory, as appears in evidence, together authorize the Treasurer to issue licenses for one year 'for a fee or tax of two hundred and fifty dollars to any person who desires to sell "malt liquors manufactured in Honolulu," by the glass or in any other quantity less than five gallons, upon the execution of a bond that he will not "sell or otherwise dispose of on the premises for which he is licensed any wines, malt liquors or spirits of any description whatever; and also that he will not store or allow to be stored on the premises for which he is licensed, any wines, malt liquors or any spirits of any description whatsoever *except such beer manufactured in Honolulu*......."

The "wholesale vending of spirituous liquors," under Section 429 of the Penal Laws, in which one of the plaintiffs is en-

gaged, and for which an annual license fee of $500 is required, simply entitles the licensee to sell liquors in the original packages imported, and in no other manner. Four of the plaintiffs, who have been licensed under Section 432 of the Penal Laws, having what are known as "Dealers' Licenses," and for which they pay five hundred dollars a year, are privileged to sell "ardent spirits in quantities not less than one gallon, wines, ales and other liquors containing alcohol, in quantities not less than one dozen bottles." But with the proviso that such liquors shall not be drunk or used on the premises where they are sold.

While Lawrence H. Dee, the remaining plaintiff, has what is known as a "Retailer's License" under Sections 434, 435 and 436 of the Penal Laws, for which he pays an annual fee of one thousand dollars, and which entitles him to sell and dispose of any spirituous liquors "by the glass or bottle on the premises therein specified between the hours of half past five o'clock in the morning and half past eleven o'clock at night, except Sundays."

It seems to be clear, that upon the face of Sections 479 to 481 inclusive, they are grossly discriminating against a foreign manufactured commodity, in this instance foreign manufactured beer. And this is made absolutely plain from the testimony of Mr. Wright, the defendant herein, who, referring to a conversation with Mr. Robertson, one of the attorneys for the complainants in relation to the issuance of a license to them, said:

"You informed me what you wanted and I told you that I would not issue a license under that law (Act of 1888) to sell foreign beer, and you then told me that perhaps there would be a suit brought against me. . . . I refused to issue a license under that law for the sale of beer manufactured outside of Honolulu."

"The Court: Let us get at it. For a manufacturer of the mainland beer to sell beer in this territory, he must pay to the territory a thousand dollars a year; is that so?

A. They must obtain a retail liquor license.

Q. For a thousand dollars a year?

Yes, sir; which permits them to sell also, permits them to sell everything.

Q.    But they cannot sell that imported beer unless they have one of these thousand dollar licenses?

A.    That is correct.

Q.    And they can sell home-made beer for $250 a license, is that correct?

A.    Yes, sir."

In other words, any man to whom a license is issued to sell and who will give bond to sell none but Honolulu brewed beer, can do so for a license fee of $250 a year; but any man who desires to sell imported beers at retail, must take out a retailer's license and pay $1000 a year, or exactly four times the amount he would have to pay to sell home-brewed beer alone, and while paying this $1000 a year, he is not even then permitted to sell the Honolulu commodity thereunder.

Clear discrimination is shown as against the manufacturers of the foreign commodity, for which they have a right, through their agents, to complain, and the fact that the $1000 license also covers the sale of spirituous liquors other than beer, is a mere incident; the fact remains that the imported beers cannot be sold except upon a license costing four times the amount of the license to sell the home-brewed beer. Such a discrimination is repugnant to the Constitution of the United States and clearly in violation of its provisions hereinbefore set forth.

It is true that, under the police powers of a state or territory, it can regulate the sale of all intoxicating liquors within its bounds, or prohibit such sale entirely, but in doing so it cannot discriminate against the stranger within its gates. The local laws of this territory, far from prohibiting the sale of spirituous liquors herein, directly contemplate the continuance of the liquor traffic, and derive a revenue therefrom by licensing it. Nothing is better settled, however, than that a state or a territory cannot constitutionally enact laws discriminating in favor of its own citizens and against the citizens of any other state or territory of the United States. On this rests one of the most sacred rights of citizenship. If the laws of one state or territory can discriminate against the property rights of the citizens of another state

or territory in one thing, they can do so in all things. It would hardly seem necessary to refer to authorities sustaining this proposition. But it was held by the Supreme Court of the United States in the case of *Walling v. Michigan*, 116 U. S. 446, which is a case in relation to the constitutionality of a statute imposing a tax on persons engaged in the sale of liquors to be brought into and sold within the state:

"A discriminating tax imposed by a state operating to the disadvantage of the products of other states when introduced into the first mentioned state is in effect, a regulation in restraint of commerce among the states and as such is a usurpation of the power conferred by the Constitution upon the Congress of the United States."

So, too, in the case of *Webber v. Virginia,* 103 U. S. 344, referring to the statute of the state of Virginia, which provided for the payment of a license fee for the right to sell sewing machines in other states, the Court says (page 351):

"Commerce among the states in any commodity can only be free when the commodity is exempted from all discriminating regulations and burdens imposed by local authority by reason of its foreign growth or manufacture."

*Leloup v. Port of Mobile*, 127 U. S. 640; *Welton v. State of Missouri*, 91 U. S. 275, and also the very recent case of *Lansing v. Davies & Co.*, 13 Haw. 286, which is to the same effect.

I am, therefore, of opinion that Chapter 46 of the Session Laws of 1888, now known as Part V. of Chapter 41 of the "Penal Laws of the Hawaiian Islands of 1897," entitled "Sale of Malt Liquors," is unconstitutional and void. Let the injunction issue as prayed for.

NOTE: Appeal dismissed. See *Wright, Treasurer, etc. v Macfarlane & Co., Limited, et al.*, 122 Fed. 770.