LOUISVILLE & N. R. CO. v. BITTERMAN et al.

(Circuit Court, E. D. Louisiana. February 13, 1904.)

No. 13,166.

1. INJUNCTION—AIDING IN VIOLATION OF CONTRACT—DEALING IN NONTRANSFERABLE RAILROAD TICKETS.

A railroad company is entitled to an injunction to restrain ticket brokers from buying and selling tickets issued by it to persons who, in consideration of reduced rates, have contracted not to transfer the same, the nontransferability being stated on their face.

In Equity. On motion for preliminary injunction.

Denegre, Blair & Denegre, for complainant.

H. L. Lazarus, Girault Farrar, and J. O'Connor, for defendants.

PARLANGE, District Judge. The fundamental question in this matter is not whether a statute forbidding any person from engaging

in the business of buying and selling any railroad tickets whatever would be upheld by this court; but the question is whether the defendants can and should be enjoined from buying and selling railroad tickets issued at reduced rates to persons who contract and bind themselves not to transfer them, the nontransferability being clearly apparent on the face of the tickets.

At times, during the course of the argument on behalf of the defendants, it seemed to be assumed by their counsel that the matter in hand was whether the defendants could be enjoined from buying and selling any railroad tickets—transferable as well as nontransferable tickets. No such question is herein involved.

Great reliance was placed by defendants' counsel on a decision of the Court of Appeals of New York holding that a statute evidently intended to destroy and prohibit practically the business of railroad ticket brokers, regardless of the nature of the tickets dealt in, would not be sustained by the courts. A similar decision by the Court of Appeals of Texas was also pressed upon the attention of the court. It is perfectly clear that it was not held in these cases that a person who has by contract, for a valuable consideration, bound himself to a railroad company not to transfer a ticket, will be allowed by the courts to violate his contract, and that outsiders, whose purpose is personal gain, will be allowed by the courts to assist the ticket holder in violating his contract.

The necessities of the defendants' case compel them to deny the validity of a contract between a railroad company and a ticket holder whereby, in consideration of a reduced rate, the ticket is made nontransferable. But it is clear beyond question that the matter has been settled adversely to the defendants' contention. It is equally clear that all the other contentions raised on behalf of the defendants, such as multifariousness and the doctrine of "clean hands," in equity, as applied to the facts in this case, have all been held by the courts to be without force.

It was also contended on behalf of defendants that the Supreme Court of this state has held favorably to their views. This contention is based solely upon the fact that an application, similar to the present case, was made to the Civil District Court for the parish of Orleans, praying for an injunction similar to the one herein prayed for. Upon the refusal of the injunction by the lower court, an application was made to the Supreme Court of the state for a mandamus to compel the issuance of the injunction, which application was refused by the Supreme Court without reasons assigned. The application to the Supreme Court was not made by appeal nor under the power of the Supreme Court to supervise the lower courts. It is therefore absolutely incorrect to assume that the Supreme Court believed that the railroad company had no case warranting an injunction simply because that court refused to mandamus the lower court to take action in a matter which was clearly left to the discretion of the lower court. And there are other grounds upon which the Supreme Court may have based its action without holding that as matter of law no injunction should issue in similar cases.

It was also argued on behalf of defendants, with great earnestness and insistence, that the public policy of this state and of the United States is opposed to the views of the law taken by complainant. The only fact presented in support of the contention that the suit was in opposition to the public policy of the state of Louisiana is that a certain bill relating to railroad ticket brokers was defeated in the state Legislature of 1902. It is obvious that that bill must have been intended to destroy and prohibit absolutely the entire business of railroad ticket brokers, regardless of the nature of the tickets dealt in. But the minority of the committee which reported the bill clearly show by their minority report that they, although opposed to the bill, were convinced that a contract not to transfer a railroad ticket—under proper conditions, of course—is binding and valid, and should be enforced. It can also be shown that there is no announcement of the public policy of the United States which could be held to militate herein against the complainant or in favor of the defendants.

It should be specially noticed that in this case there is no denial, but, on the contrary, an admission, that the defendants deal in the class of tickets in question, and the defendants contend that they have the right to deal in them. The matter, therefore, turns mostly, if not entirely, on questions of law, upon all of which I find against the defendants.

In this case this court, through Judge Boarman, issued an injunction concerning the United Confederate Veterans' Reunion tickets, after full argument. But the matter has been reargued before me de novo, as though this court had not already passed on the questions of law involved. Judge Boarman having virtually declined to issue an injunction including all nontransferable tickets to be issued at any time in the future, I see no reason to re-examine that question, and to pass upon it at the present time. A preliminary injunction will issue as to the nontransferable Mardi Gras tickets.

The railroad company must give in this case a bond of $5,000 to hold the defendants harmless against any damages in the case.

### NOTE BY THE COURT.

See, in support of the opinion, Mosher v. St. Louis, etc., R. Co., 127 U. S. 390, 8 Sup. Ct. 1324, 32 L. Ed. 249; Boylan v. Hot Springs R. R. Co., 131 U. S. 146, 10 Sup. Ct. 50, 33 L. Ed. 290; Angle v. Chicago, etc., R. W. Co., 151 U. S. 1, 14 Sup. Ct. 240, 38 L. Ed. 55; Nashville, etc., R. W. Co. v. McConnell et al. (C. C.) 82 Fed. 65; Delaware, etc., R. R. Co. v. Frank et al. (C. C.) 110 Fed. 689; Penn. R. R. Co. et al. v. Beekmann et al., 30 Wash. Law Rep. 715, in Supreme Court of the District of Columbia, decided October 13, 1903; Kinner et al. v. Lake Shore, etc., R. R., 47 Ohio Law Bul. (No. 18) 294, in Circuit Court for the Eighth Circuit of Ohio, decided February 10, 1902; Schubach v. Judge, 78 S. W. 1020, in Supreme Court of Missouri, October term, 1903; Hirt v. Judge, Id.; Leonard v. Judge, Id.; Wabash R. R. Co. v. Wasserman et al., in Circuit Court of the City of St. Louis; Wood's R. R. Law, vol. 3, § 347; A. & E. Ency. Law (1st Ed.) verbis "Tickets and Fares," vol. 25, p. 1091.