RIVERSIDE & A. RY. CO. v. CITY OF RIVERSIDE et al.

(Circuit Court, S. D. California, S. D.   November 1, 1902.)

No. 1,000.

1. JURISDICTION OF FEDERAL COURT—FEDERAL QUESTION—IMPAIRMENT OF CONTRACT.

It is not essential to the jurisdiction of a federal court of a suit based on an alleged impairment of the obligation of a contract by a state in violation of article 1 of section 10 of the constitution that there should be a valid contract, or that the impairment complained of should in fact be effected, but it is sufficient for jurisdictional purposes if plaintiff claims the existence of such contract, and its impairment, in good faith.

2. CONSTITUTIONAL LAW—DUE PROCESS OF LAW—ACTION OF CITY.

The action of a city in repudiating and refusing to perform a contract by the exercise of powers conferred upon it by the state constitutes a depriving of the other party of his property by the state without due process of law within the constitutional inhibition, notwithstanding the fact that the contract was made by the city in a quasi private or business capacity rather than a governmental capacity.

3. JURISDICTION OF FEDERAL COURTS—FEDERAL QUESTION.

A suit to enjoin a city from carrying into effect a resolution of its council by which it declared its purpose to discontinue the furnishing of electric power to complainant under a contract, on the ground that such action was an impairment of the obligation of the contract and deprived complainant of its property without due process of law, is not one for the specific performance of the contract, but one for the protection of complainant's constitutional rights, of which a federal court has jurisdiction.

4. SAME—AMOUNT IN CONTROVERSY.

In a suit to enjoin a city on constitutional grounds from shutting off a supply of electric power furnished under a contract, the amount or value in dispute for jurisdictional purposes is the value of complainant's rights under the contract, and not the amount of the payments to be made thereunder.

5. CITIES—VALIDITY OF CONTRACT—SUPPLYING ELECTRIC POWER TO STREET RAILROAD.

A city having authority under section 862 of the California municipal corporation act of 1883, as amended in 1891 and 1897, to acquire, own, and operate street railways, telephone and telegraph lines, gas, and other works for light and heat, and to permit the laying of tracks for street railways in the public streets, has power to contract for a supply of electricity to be used for any of such purposes; and, where it has so contracted for a supply to be used by the terms of the contract in any way it should see fit, or disposed of to private citizens to use for any purpose whatever within the limits of the city, a subcontract to furnish a portion of such supply to a company for the operation of a street railroad to be constructed by the company is not on its face ultra vires.

In Equity.   On motion for preliminary injunction and demurrer to bill.

¶ 3. Jurisdiction of federal courts in cases involving federal question, see notes to Bailey v. Mosher, 11 C. C. A. 308; Montana Ore Purchasing Co. v. Boston & M. Consol. Copper & Silver Min. Co., 35 C. C. A. 7.

¶ 4. Jurisdiction of circuit courts as determined by amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Tennent-Stribling Shoe Co. v. Roper, 36 C. C. A. 459.

John G. North, for complainant.
W. A. Purington, for defendants.

WELLBORN, District Judge. Complainant and the city of Riverside are corporations organized and existing under the laws of California, the latter being a municipal corporation of the sixth class. The other defendants are also citizens of said state.

On December 6, 1895, said city, as party of the first part, and the Redlands Electric Light & Power Company, as party of the second part, entered into a contract, whereby they agreed, among other things, quoting from the contract: ·

"That the said party of the second part will furnish and deliver to said party of the first part, at the shafts of one or more generators set up in the power house of said party of the second part, near Redlands, county of San Bernardino, state of California, * * * sufficient developed water power to operate and transmit to the substation of the said party of the first part, to be located at any point within the corporate limits of the city of Riverside, * * * electricity to the extent of two hundred (200) horse power measured at said substation, for a period of twelve (12) years from and after the date hereof, at the rate of thirty-six dollars ($36) per year for so much developed water power delivered as aforesaid as shall be sufficient to generate and transmit electricity to the extent of one (1) horse power measured at the said substation of said party of the first part, payable in equal monthly installments, at the end of each and every month during said term, the said water power so furnished to be a twenty-four (24) hours' continuous service. * * * The said party of the first part also agrees, for the same consideration, to erect, construct, and acquire the necessary generators, line, and substation for the transmission and reception of the electricity from the power house of the said party of the second part, near Redlands, to such substation within the corporate limits of the city of Riverside, consisting of the necessary poles, wires, transformers, generators, and other apparatus, and within such time as it will be possible so to do, having regard to all necessary legal steps to be taken; provided the said party of the first part shall not be held to pay any sum whatever under this agreement for the time necessarily occupied in the construction, erection, and acquisition of the poles, wires, transformers, and other apparatus above mentioned."

Said city had the right, at the end of 12 years, to renew the agreement for a period of 10 years longer, at the highest rate of payment named for the original term, and upon the expiration of 22 years to again renew it for a further period of 10 years at the rate of payment fixed for the second period.

About the month of October, 1896, the transmission line named in said contract was completed, and the Redlands Electric Light & Power Company began to supply said city with power under said contract, and ever since the last-named date has continued, and still continues, to furnish the same, and said contract at all times since has been, and still is, in full force and effect.

On September 14, 1897, said city entered into a contract with the complainant to furnish it a maximum of 80 horse power between 6 a. m. and 5 p. m., and 40 horse power between 5 p. m. and midnight, of each day during the months of October, November, December, January, February, and March, and 80 horse power between the hours of 6 a. m. and 6 p. m., and 40 horse power between 6 p. m.

118 F.—47

and midnight, of each day during the remaining months of the year; and complainant was to pay for the power so furnished $500 per year for the first three years, $1,500 per year for the next two years, $2,400 per year for the following three years, and thereafter $2,700 per year until the termination of the Redlands contract, including its two extensions of 10 years each. The life of said contract is made dependent upon the continued receipt of power by the city of Riverside under the Redlands contract, which latter contract is referred to in the former and made a part thereof.

The power contracted to be furnished to complainant by said city was, at the date of the contract, surplus power, that is to say, power received by said city under its contract with the Redlands Electric Light & Power Company, and not required by users of light or power, other than complainant. Complainant was induced by its contract with said city to construct nine miles of street railway in said city, at a cost of more than $100,000, and in April, 1898, began to use, and ever since has used, and is now using, the power obtained under said contract with said city in the operation of said railway, and its right to said use will continue until the termination of the city's contract with the Redlands Company, and complainant has no other source of power than that obtained through its contract with said city, and there is no other electrical machinery, generator, or plant in said city, or within any reasonable distance thereof, from which complainant can obtain electric power to operate said railway. The power furnished to said city under its contract above-mentioned with the Redlands Electric Light & Power Company is used to generate electricity by means of a generator in the power house of said Redlands Company, the said electricity so generated and furnished to said city being conveyed to it over the transmission line above mentioned, constructed by said city, and extending from the power house of the Redlands Company to, and entering the power house and substation of said city within, the corporate limits thereof. A part of said electricity and electrical power so generated and conveyed to the said power house and substation is directed and conducted by said defendants into and through the machinery and over the conductors and feeder wires of complainant to its said street railway and the trolley wires and cars operated thereupon. The Redlands contract, dated December 6, 1895, with its original term of 12 years, and its two extensions of 10 years each, will expire December 6, 1927, and the aggregate of the payments to be made by complainant under its contract with the city of Riverside, counting from April, 1898, when complainant began to use the power, to December 6, 1927, the end of the Redlands contract, a period of 29 years and 8 months, will be $70,000.

Complainant is not in default upon its contract, but defendants have threatened to, and, unless restrained by this court, will sever the connection between its wires and the Redlands wires, and cut off the Redlands electricity from complainant, and by so doing prevent the running of complainant's cars and the operation of its street railway. Said city, by its board of trustees, on October 22, 1901, passed the following resolutions:

"Whereas, the city of Riverside, on the 14th day of September, 1897, entered into a contract with the Riverside and Arlington Railroad Company, agreeing to furnish said railway with electric power at a stipulated price, and

"Whereas, according to a report of the superintendent of the city electric light plant, made to this board on September 18, 1901, and a second report dated October 5, 1901, it appears that the said price is considerably below the actual cost to the city of the said power, resulting in great loss to this city, which loss continues throughout the entire term of said contract; and

"Whereas, the city attorney has advised this board, in a written opinion filed recently, that the said contract is illegal and void, and in conflict with the constitution of the state of California, if said power is furnished at less than the cost of production, unless the city is to supply said power out of surplus power otherwise unused; and

"Whereas, it appears that the said power now sold to said railway company is not surplus power, but is the regular current for which this city has a good market at a price affording a profit over and above the cost of production, to supply which, delivered, the city is compelled to generate a large portion of its power by steam at an increased cost; therefore be it

"Resolved, that the Riverside and Arlington Railway Company is hereby notified that the price charged them since January 1, 1901, and to be hereafter charged, shall be the actual cost of production of said current, and that if said company shall not notify this board on or before November 5, 1901, that they will accept and pay for said power at said rate, dating from January 1, 1901, that the board will shut off said company from receiving electric current after said date, November 5, 1901. And further

"Resolved, that if it is the wish of said company to have the court's opinion on the validity of said contract, that the board is willing to continue furnishing said power during the pendency of any action brought to test said contract, provided that said action is prosecuted with reasonable diligence, and provided that the power so furnished is paid for at the price herein established, and that if said contract is held binding on the city that the city will refund to said company the excess of money so paid over and above the amount due under the said contract."

The foregoing are the material facts as they appear, either expressly or by necessary implication, upon the face of the bill.

The defendants have interposed a demurrer, assigning therein, for causes, that the court has no jurisdiction, and that the bill is without equity, and, in their briefs, urge, under the former cause, that the bill neither shows a federal question nor a matter of adequate value in dispute, and, under the latter, that the contract between complainant and the city of Riverside is ultra vires and void. These grounds of demurrer will be noticed in the order of their statement.

I. The allegations of the bill, on which complainant relies for a federal question, are, in brief, that complainant has a contract with the city of Riverside, by and under which the latter agreed to furnish, and since April, 1898, has furnished, and is now furnishing, the former with electrical power to operate its street railroad within the limits of said city, and that said city, by the resolutions aforesaid, has repudiated said contract, and by said resolutions and otherwise threatens to, and will, unless judicially restrained, shut off from complainant the electrical power to which complainant, under said contract, is entitled, which resolutions and threatened action, the bill alleges, will, if consummated, impair the obligation of said contract, and deprive complainant of its property without due process of law, and, therefore, contravenes section 10 of article 1 of the constitution of the United States, and section 1 of the 14th amendment to said

constitution. It is not essential to federal jurisdiction, under said constitutional provisions, that there should really be a valid contract, or that the impairment or deprivation complained of should really be effected through legislation or other action of the state, but it is sufficient if these grounds of suit are claimed in good faith and not frivolously. City R. Co. v. Citizens' St. R. Co., 166 U. S. 558, 17 Sup. Ct. 653, 41 L. Ed. 1114; Illinois Cent. R. Co. v. City of Chicago, 176 U. S. 646, 20 Sup. Ct. 509, 44 L. Ed. 622; Yazoo & M. V. R. Co. v. Adams, 180 U. S. 1, 21 Sup. Ct. 240, 45 L. Ed. 395; Illinois Cent. R. Co. v. Adams, 180 U. S. 28, 21 Sup. Ct. 251, 45 L. Ed. 410; Penn Mut. Life Ins. Co. v. City of Austin, 168 U. S. 685, 18 Sup. Ct. 223, 42 L. Ed. 626; Hamilton Gaslight & Coke Co. v. City of Hamilton, 146 U. S. 258, 13 Sup. Ct. 90, 36 L. Ed. 963; Michigan Tel. Co. v. City of Charlotte (C. C.) 93 Fed. 13; Vicksburg Waterworks Co. v. City of Vicksburg (decided April 7, 1902) 22 Sup. Ct. 585, 46 L. Ed. 808. It is true an earlier decision of the supreme court, cited in defendants' brief (City of New Orleans v. New Orleans Waterworks Co., 142 U. S. 79, 12 Sup. Ct. 142, 35 L. Ed. 943), while recognizing the sufficiency of a bona fide claim of impairment or deprivation through legislation or other action of the state, seems to require (Justice Harlan dissenting) a valid contract for jurisdictional purposes. The last requirement, however, is not found in subsequent cases, while, as shown below, two of them expressly, and others in effect, hold that a bona fide claim of contract is sufficient. In City R. Co. v. Citizens' St. R. Co., supra, the court, through Justice Brown, who also wrote the opinion in City of New Orleans v. New Orleans Waterworks Co., supra, says:

"All that is necessary to establish the jurisdiction of the court is to show that the complainant had, or claimed in good faith to have, a contract with the city, which the latter had attempted to impair."

In Illinois Cent. R. Co. v. City of Chicago, supra, federal jurisdiction was sustained, and yet the court held, upon the merits, that the contractual obligation which it was claimed had been impaired did not exist. This last case, therefore, necessarily determines that the rule concerning the sufficiency for jurisdictional purposes of a bona fide claim of a federal question includes the validity of the contract as well as its impairment,—in other words, that the contract need not really be valid nor impaired, provided its validity and impairment are claimed in good faith, and the claims are not frivolous. In Yazoo & M. V. R. Co. v. Adams, supra, the supreme court entertained jurisdiction of the case, yet held, solely upon a construction of state laws, that there was no such contract as the one which it was claimed had been impaired, saying at page 15, 180 U. S., and page 245, 21 Sup. Ct., 45 L. Ed. 395,—the opinion again being by Justice Brown:

"As we have often held that, where an impairment of a contract by state legislation is charged, the existence or nonexistence of the contract is a federal question, it is impossible to escape the conclusion that the foundation of the whole case was whether there was really a contract which had been impaired, and that this was necessary to the determination of the case. As already stated this was a federal question, and the fact that the supreme court did not in terms discuss the contract clause of the constitution does not oust our jurisdiction."

In the yet later case of Illinois Cent. R. Co. v. Adams, supra, the supreme court upheld the jurisdiction of the circuit court, without passing upon the existence or validity of the contract which it was alleged had been impaired by state legislation. In Vicksburg Waterworks Co. v. City of Vicksburg, supra, which is the latest case on the subject, the court held that there was a federal question, and said:

"The objection urged in the brief of the appellee to the validity of the contract, because it undertakes to bind the city for a period of thirty years, because an attempt to barter away the legislative power of the city authorities, and because creating an indebtedness in excess of the charter limits, are those that were considered at length in the similar cases of City of Walla Walla v. Walla Walla Water Co., 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341, and City of Los Angeles v. Los Angeles City Water Co., 177 U. S. 558, 20 Sup. Ct. 736, 44 L. Ed. 886, and were in those cases held to be untenable. However, we do not wish to be understood as now determining such questions in the present case, for we are only considering whether or not the circuit court had jurisdiction to consider them."

The circumstance upon which both parties, as well as the authorities they cite (Illinois Trust & Savings Bank v. Arkansas City, 22 C. C. A. 171, 76 Fed. 271, 34 L. R. A. 518; Pikes Peak Power Co. v. City of Colorado Springs, 44 C. C. A. 333, 105 Fed. 11; City of Walla Walla v. Walla Walla Water Co., supra; Little Falls Electric & Water Co. v. City of Little Falls (C. C.) 102 Fed. 663; and Iron Mountain R. Co. of Memphis v. City of Memphis, 37 C. C. A. 410, 96 Fed. 113), are agreed, that the city of Riverside, in entering into its contract with complainant, acted in a quasi private capacity, is unimportant in determining the question whether or not the threatened impairment and deprivation, which complainant seeks to enjoin, are imputable to the state. The making of a contract by a municipality for or concerning a public utility may be the exercise of a proprietary function, but, when the contract has been made, its repudiation by the legislative body of the municipality, and forcible divestiture of the contractual rights, by direction of said body and through the superior physical power which the municipality wields, are surely something more than the mere acts of a private person. The declaration of the resolutions, already quoted, that, unless complainant accepted the interpretation placed upon said contract by the city of Riverside, the latter would shut off from the former the electric current it was then receiving, obviously implied that the executive authorities and agencies of the city, which unquestionably are governmental, would, so far as necessary, be employed to carry out said purpose, and therefore said resolutions and the illegal action they threaten, even if they fall short, which, however, I do not decide, of legislation, within the meaning of article 1 of section 10 of the constitution of the United States, are yet imputable to the state under section 1 of the 14th amendment to said constitution. In Chicago, B. & Q. R. Co. v. City of Chicago, 166 U. S. 226, 17 Sup. Ct. 581, 41 L. Ed. 978, Mr. Justice Harlan, speaking for the court, said:

"But it must be observed that the prohibitions of the amendment refer to all the instrumentalities of the state,—to its legislative, executive, and judicial authorities,—and, therefore, whoever by virtue of public position under a state government deprives another of any right protected by that amendment against deprivation by the state, 'violates the constitutional inhibition; and,

as he acts in the name and for the state, and is clothed with the state's power, his act is that of the state.' "

In Ex parte Virginia, 100 U. S. 339, 25 L. Ed. 676, the court says:

"We have said the prohibitions of the 14th amendment are addressed to the states. * * * They have reference to actions of the political body denominated a state, by whatever instruments or in whatever modes that action may be taken. A state acts by its legislative, its executive, or its judicial authorities. It can act in no other way. The constitutional provision, therefore, must mean that no agency of the state, or of the officers or agents by whom its powers are exerted, shall deny to any person within its jurisdiction the equal protection of the laws. Whoever, by virtue of public position under a state government, deprives another of property, life, or liberty without due process of law, or denies or takes away the equal protection of the laws, violates the constitutional inhibition; and as he acts in the name of and for the state, and is clothed with the state's power, his act is that of the state. This must be so, or the constitutional prohibition has no meaning."

Defendants' contention that the bill here is for a specific performance, and, therefore, City of Fergus Falls v. Fergus Falls Water Co., 19 C. C. A. 212, 72 Fed. 873, and St. Paul Gaslight Co. v. City of St. Paul, 181 U. S. 142, 21 Sup. Ct. 575, 45 L. Ed. 788, are controlling authorities, is based upon a false premise. Said bill is not for a specific performance of the contract therein set out, although, if effectual, it may ultimately contribute to that object, but, as in Vicksburg Waterworks Co. v. City of Vicksburg, supra, is for an injunction against apprehended impairment of contract and deprivation of property through legislation and other action of the state, within the meaning of the constitutional provisions above mentioned, and, therefore, the resolutions aforesaid, or allegations of their contents and passage, are material as showing complainant's right to be protected by said constitutional provisions. These features of the case distinguish it, not only from the two last named and others of like character, but also from Tennessee v. Union & Planters' Bank, 152 U. S. 454, 14 Sup. Ct. 654, 38 L. Ed. 511, and the subsequent cases in line therewith, among them Gas Co. v. Miller (C. C.) 96 Fed. 12.

The argument, earnestly made by defendants, that said resolutions and threats, for various reasons assigned in their brief, do not constitute legislation or any sort of state action, within the meaning of said constitutional provisions, itself admits a federal question in the case, for it is, in substance, a construction of said provisions in opposition to the claims insisted upon by complainant, and, no matter which way these claims may be decided on the merits, there is no reason to question complainant's good faith in urging them. It is unnecessary, however, to discuss or review in detail the numerous other authorities cited in the briefs of the respective parties on this branch of the case, since the supreme court of the United States, in one of the cases already partially examined, has expressly adjudged, after full consideration, upon allegations substantially similar to those made by the bill herein, the existence of a federal question. Vicksburg Waterworks Co. v. City of Vicksburg, supra. The syllabus of said case is as follows:

"1. A case presented by a bill in equity which alleges that a contract right of a waterworks company with whose predecessors a municipality,

with legislative sanction, contracted for a municipal water supply, is impaired by an ordinance directing that the waterworks company be notified that the city denies any liability on any contract for the use of hydrants, and by the subsequent action of the city in holding an election to authorize an issue of bonds to buy or construct waterworks of its own, and in refusing to pay the amount due and payable under the terms of the contract,—is one so arising under the laws and constitution of the United States as to give a circuit court of the United States jurisdiction.

"2. Apprehension that such illegal action may be taken by a municipality as will impair the franchise and contract rights of a waterworks company, with whose predecessor the city has contracted for a municipal water supply, entitles the company to maintain a suit for equitable relief in advance of any actual proceedings on the part of the city to impair the company's rights under the contract."

See, also, City of Walla Walla v. Walla Walla Water Co., supra; Illinois Cent. R. Co. v. Adams, 180 U. S. 28, 21 Sup. Ct. 251, 45 L. Ed. 410; Penn Mut. Life Ins. Co. v. City of Austin, 168 U. S. 685, 18 Sup. Ct. 223, 42 L. Ed. 626; Hamilton Gaslight & Coke Co. v. City of Hamilton, 146 U. S. 258, 13 Sup. Ct. 90, 36 L. Ed. 963; Scott v. McNeal, 154 U. S. 45, 14 Sup. Ct. 1108, 38 L. Ed. 896; Indianapolis Gas Co. v. City of Indianapolis (C. C.) 82 Fed. 245; Railroad Co. v. Taylor (C. C.) 86 Fed. 168; San Joaquin & K. R. Canal & Irrigation Co. v. Stanislaus Co. (C. C.) 90 Fed. 516; Michigan Tel. Co. v. City of Charlotte (C. C.) 93 Fed. 13; Mercantile Trust & Deposit Co. v. Collins Park & B. R. Co. (C. C.) 99 Fed. 812; Iron Mountain R. Co. of Memphis v. City of Memphis, 37 C. C. A. 410, 96 Fed. 113; Los Angeles City Water Co. v. City of Los Angeles (C. C.) 88 Fed. 720; Id., 103 Fed. 711; and Pikes Peak Power Co. v. City of Colorado Springs, 44 C. C. A. 333, 105 Fed. 1.

II. The matter here in dispute, I think, is the right which complainant has, under its contract with said city, to the electrical power therein agreed to be furnished. Railroad Co. v. McConnell (C. C.) 82 Fed. 73; Humes v. City of Ft. Smith (C. C.) 93 Fed. 862; Railroad Co. v. Frank (C. C.) 110 Fed. 689; El Paso Water Co. v. City of El Paso, 152 U. S. 157, 14 Sup. Ct. 494, 38 L. Ed. 396; Colvin v. City of Jacksonville, 158 U. S. 456, 15 Sup. Ct. 866, 39 L. Ed. 1053. In Railroad Co. v. Frank, supra, the court quotes approvingly from Humes v. City of Ft. Smith, supra, as follows: "Jurisdiction is not determined in that way. Jurisdiction is determined by the value of the right to be protected, or the extent of the injury to be prevented, by the injunction." The bill does not expressly allege, nor otherwise show with requisite certainty, that the matter in dispute, the contractual right above mentioned, exceeds the value of $2,000. The cost of said power is alleged, but that is a different thing from complainant's right thereto, and, besides, while cost may be a criterion, it can hardly be considered an equivalent of value.

III. " 'It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in, or incident to, the powers expressly granted; third, those essential to the declared objects and purposes of the corporation,—not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved

by the courts against the corporation, and the power is denied. * * *' 1 Dill. Mun. Corp. p. 115, § 89. This text is cited with approval by defendants in their brief, and, without referring to the numerous cases also cited in the same connection, may be accepted as a clear summary of the law on the subject to which it relates." Los Angeles City Water Co. v. City of Los Angeles (C. C.) 88 Fed. 729. The powers of the city of Riverside, as they existed at the dates of its contracts with the Redlands Electric Light & Power Company and with complainant, and as they exist now, are, in part, declared in subdivision 13 of section 862 of the municipal corporation act of 1883, as amended in the years below named, as follows:

"To acquire, own, construct, maintain and operate street railways, telephone and telegraph lines, gas and other works for light and heat, public libraries, museums, gymnasiums, parks and baths; and to permit, under such restrictions as they may deem proper, the laying of railroad tracks and the running of cars drawn by horses, steam or other power thereon, and the laying of gas and water pipes in the public streets, and to permit the construction and maintenance of telephone and telegraph lines therein." St. Cal. 1891, pp. 233, 234, and St. Cal. 1897, pp. 175, 176.

From this express legislative grant of power, defendants deduce, and rightfully, implied authority for the contract between the city of Riverside and the Redlands Electric Light & Power Company, but deny that there was any such authority for the contract between said city and complainant. The contention of defendants as to the latter contract is stated at pages 3 and 4 of their brief, filed March 27, 1902, as follows:

"The validity of the contract is attacked mainly on the ground that such contract is ultra vires in that electric power acquired for lighting purposes is being diverted to a foreign purpose. The city would not have the power to divert the electric current to purposes other than for lighting, because the city might receive more for it than for lighting purposes; it has no right to divorce the electric power from the purpose for which it was acquired, or from the only purpose for which the city had power to acquire electric power."

This contention, it seems to me, is vulnerable in assuming that the city of Riverside has no authority to acquire electric power except for lighting, and that the electric power acquired under the Redlands contract was solely for that purpose. The supreme court of the state of California has held, quoting the second and third paragraphs of syllabus, that:

"When a corporation seeks to avoid its contract on the ground of its want of power to contract, where the contract is not upon its face necessarily beyond the scope of its authority, it will, in the absence of proof, be presumed to be valid, and the corporation must make good its defense of ultra vires by plea and proof.

"With respect to mere ordinary business contracts, a municipal or quasi municipal corporation stands on the same footing with other corporations; and it is only where the contract could not legally be made by it under any conceivable circumstances that its inability to contract can be raised upon demurrer." Brown v. Board, 103 Cal. 531, 37 Pac. 503.

Defendants' counsel, in the brief above mentioned, filed March 27, 1902, at page 7, refers to the case last cited approvingly, as follows:

"I admit the contract must be presumed to be valid unless it appears upon its face that it is beyond the power of the city to enter into this contract.

The rule stated in Brown v. Board, 103 Cal. 534, 37 Pac. 503, is undoubtedly correct, viz: 'A contract by a corporation, which is not upon its face necessarily beyond the scope of its authority, will, in the absence of proof, be presumed to be valid.' "

The grant of power to construct and operate "street railways" implies authority to acquire electricity therefor as fully as authority to acquire electricity for lighting is implied in the grant to construct and operate "gas and other works for lighting." Nor is ownership of a roadbed, cars, and other appliances of a street railway any more a condition precedent to the exercise of the implied authority in the former case than ownership of a complete plant for furnishing power, as well as generating and transmitting the electric current, is to the exercise of similar authority in the latter, and a contract, engaging electricity for either purpose, is good upon its face. Now, recurring to the contract between the city of Riverside and the Redlands Electric Light & Power Company, we find therein a clause which unmistakably includes street railways among the uses to which the electric power contracted for is to be applied, and which is as follows:

"Said party of the first part shall have the right, in any way it sees fit, to use or dispose of such power to private citizens to use for any purposes whatever, within the corporate limits of the city of Riverside; provided, however, that such electric power may be used to propel electric cars upon any line running out from the said city of Riverside to any point in the county of Riverside."

I am of opinion that the city of Riverside, by virtue of the legislative grant of power above quoted, and under its contract with the Redlands Company, respectively, had authority to, and did, acquire electric power for each of the purposes above indicated. The transmission of the electricity thus acquired began in October, 1896, and nearly a year thereafter, on September 14, 1897, the city of Riverside found itself entitled to a large or considerable quantity of electric power for which it had no present need, and which would have gone to waste unless it had been sold to private individuals for such use as they desired to make of it. It is true that the city, looking to its possible or probable future growth and a resulting increased demand for electrical lighting, might, if it had thought best to do so, have allowed its surplus electricity to be temporarily wasted, and ultimately have realized a larger direct revenue from its application to lighting purposes than will be realized on account of the street railway uses for which it was contracted to complainant. But, had such a course been pursued, it probably would have defeated, or postponed indefinitely, the development of the nine miles of street railway service, whose conveniences and benefits the inhabitants of said city, as one of the results of the city's contract with complainant, have enjoyed since 1896. These speculations, however, in no way affect the power of the city in the premises, but only the question, which is immaterial here, whether or not the power, in view of subsequent events, was wisely exercised. It was under the conditions above named that the city entered into its contract with the complainant, and, bearing in mind that the acquisition, construction, maintenance, and operation of street railways are among the declared purposes of the city's organization, the conclusion seems to be unavoidable that said contract was within the scope of the city's

powers, and that its obligations cannot be terminated or changed by any subsequent increase in the demand for electrical lighting. Pikes Peak Power Co. v. City of Colorado Springs, 44 C. C. A. 333, 105 Fed. 1. Whether or not the bill shows such an increased demand as indicated, I am in doubt, but, assuming that said fact does appear, I hold that said contract is unaffected thereby.

Complainant contends that ample authority for the contract between it and the city of Riverside is found in subdivision 2 of the hereinbefore mentioned section 862 (St. Cal. 1897, p. 175), which is as follows:

"The board of trustees of said city shall have power: * * * To purchase, lease, or receive such real estate and personal property as may be necessary or proper for municipal purposes, and to control, dispose of, and convey the same for the benefit of the city or town; provided, they shall not have power to sell or convey any portion of any water front."

Complainant also contends that defendants are estopped from denying the validity of said contract. The conclusions already announced render it unnecessary for me to pass upon the last two contentions.

For the reason that the bill fails to show with sufficient certainty that the matter in dispute exceeds, exclusive of interest and costs, the value of $2,000, the demurrer must be sustained. Complainant, however, asks, in its brief, that, in view of the substantial nature of the controversy, as it appears from the bill, the court permit complainant to amend in the respect just indicated, rather than dismiss the bill, and thus oblige complainant to file a new one. This permission, under the circumstances, I think, should be granted, but upon condition that the amendment be made without delay

The motion for injunction will be continued until the filing of the amendment, and the restraining order remain in force until otherwise directed by the court.