## O. W. HOLMES v. CITY OF FAYETTEVILLE.

(Filed 20 November, 1929.)

**1. Municipal Corporations B a—General powers of municipal corporations.**

The powers of a municipal corporation are those granted in express words or necessarily implied thereby, incident or essential to the declared objects and purposes of the corporation as ascertained from the interpretation of its charter, and special and general statutes and the organic law.

**2. Municipal Corporation B d—In this case held: city had authority to furnish electric current to those within three mile zone.**

Where a city has its own poles and electric wires for the supplying of electric current supplied under contract with a private corporation to supply it, with the statutory authority to furnish for profit individuals, corporations, etc., within the limits of the city and a territory extending three miles in all directions therefrom, it is not inhibited by the State or Federal Constitutions from supplying such current to another corporation for the purpose of furnishing electricity to consumers within the city limits of its extended territory when such service does not affect the service rendered in this respect to its own citizens, and tends to diminish

and not to increase the rate of taxation of its citizens, and this is not objectionable on the ground that it does not contribute to the fulfillment of its municipal functions as an agency of the State Government for local purposes.

**3. Same—Legislature may grant city power to sell electricity within three mile zone.**

A municipality has the power to purchase electricity for its own use and the use of its citizens, and where it is authorized by general and special statutes to purchase current from a power company and to resell and distribute it at a profit to its citizens and to those within a three-mile zone therefrom, the grant of power to do so is effective in law under the authority of the Legislature to grant municipal corporations any powers which promote the welfare of the public and the communities in which they are established unless prohibited by the organic law. Article VIII, section 4; C. S., 2807, 2808, as amended; Private Laws 1929, ch. 190.

**4. Taxation A a—Where expansion of city's power lines is to be paid for out of profits therefrom submission to voters is unnecessary.**

Where an incorporated city under authority of statute furnishes through its own transmission lines electricity for its citizens for hire within a circumscribed territory adjoining its limits, and the expenses incident thereto are paid out of its surplus profits, the proposition is not one that requires the approval of the voters as it does not fall within the provisions of our State Constitution, Art. VII, sec. 7, nor is it in violation of the Fourteenth Amendment to the Federal Constitution.

**5. Statutes A e—Where authority is given city by special and general statute Art. VIII, sec. 1 does not apply.**

The provisions of Article VIII, section 1, of our State Constitution, prohibiting the Legislature from creating a corporation or extending, altering or amending its charter by special act has been held to apply only to private or business corporations; and where the Legislature by special act amending the charter of a city authorizes it to purchase electricity and resell it to its inhabitants and those within a three-mile zone of the city, the power to sell to such individuals and corporations does not detract from the public service or destroy the public character of the municipality, and where the same power is given the city by general statute also, the exercise of the power thus conferred will not be enjoined.

THIS was a motion to continue to the hearing an order restraining the defendant from paying out any of its funds for the purpose of erecting and maintaining an electric transmission line beyond its corporate limits and furnishing an electric current to persons, firms and corporations outside the corporate limits, heard by *Cranmer, J.,* at Chambers, on 26 March, 1929. The temporary restraining order was dissolved and the plaintiff excepted and appealed upon error assigned.

In 1905 the General Assembly amended the charter of the defendant by creating a "Public Works Commission," to consist of three members, who should have charge, control, supervision, and management of all the defendant's public utilities, including waterworks, sewerage, electric

light plant, etc., and who should have power and authority to make necessary contracts for the construction, repair, alteration, enlargement, and proper management of any of said public utilities, and to fix rates for their use. Private Laws, 1905, ch. 311. In 1925 this act and other acts were amended and the corporate powers of the defendant were enlarged. Private Laws 1925, ch. 28. By these amendments the defendant was authorized and empowered to purchase, conduct, own, lease, and acquire utilities and to provide for all things in the nature of public works, and to acquire, establish, and operate waterworks, electric lighting systems, etc. Section 3 of Article 2, says that all ordinances enacted in the exercise of the police power for sanitary purposes or the protection of the defendant's property shall, unless otherwise provided by the aldermen, apply with equal force to the territory outside the city limits within one mile in all directions from the corporate boundaries. Article 3 provides for acquiring by purchase or condemnation rights of way, easements, and privileges for water, sewer, and electric light systems either within or outside the city, and section 7 of Article 7, for the supervision of electric light, water, and sewerage plants. On 16 March, 1929, section 3, Article 2, of the act of 1925, *supra,* was amended by adding thereto the following: "Sec. 4. That said city of Fayetteville be, and it is hereby authorized and empowered in its discretion, to extend, construct, maintain, and operate its water, sewerage, and electric light lines and systems for a distance of not exceeding three miles in all directions beyond the corporate limits of said city as the same now exist or may hereafter be established; and to make reasonable charges for the use of such utilities." All laws in conflict with the act were repealed. Private Laws 1929, ch. 190.

"The city may own and maintain its own light and waterworks system to furnish water for fire and other purposes, and light to the city and its citizens," etc. C. S., 2807. This statute was amended in 1929 by inserting after the word "citizen" the following: "And to any person, firm, or corporation desiring the same outside the corporate limits, where the service is available." Public Laws 1929, ch. 285. This act amends C. S., 2808, by adding the following: *"Provided, however,* that for service supplied outside the corporate limits of the city, the governing body, board, or body having such waterworks or lighting system in charge, may fix a different rate from that charged within the corporate limits, with the same exemption from liability by the city or town as is contained in section two thousand eight hundred seven."

*Brooks, Parker, Smith & Wharton* and *C. Murchison Walker* for plaintiff.

*Robinson, Downing & Downing* and *Nimocks & Nimocks* for defendant.

ADAMS, J. The defendant has no plant of its own for producing and furnishing electricity as a public utility, but it owns and maintains a system of poles, wires, and appliances for transmitting and delivering electricity to persons, firms, and corporations within the city. Some years ago it made a contract with the Carolina Power and Light Company, which is now in effect, for the purchase of an electric current for the use of the city and for resale or redistribution within the corporate limits and within adjacent territory distant not more than three miles from the corporate boundaries. The contract is to continue ten years from 10 September, 1924. The company is to supply all the electric power requirements of the city not to exceed certain electrical horsepower. The city shall not sell or permit others to use power supplied under the contract except when expressly provided for in the rate classification under which the service is furnished, and the company shall have the right to serve only such power customers within the area as shall require an installation aggregating not less than twenty-five horsepower.

After the creation of the Public Works Commission, the city extended its light and water systems beyond the corporate limits, thereby supplying a Normal School, a Women's Home, and various individuals outside the city with light and water, and at the commencement of this action was engaged in constructing lines for selling electricity to persons and corporations outside the city limits, but within the three-mile zone. It intends, unless restrained, to complete this work. For more than ten years it has owned and operated transmission lines beyond the corporate boundaries, by which, it is alleged, electricity has been sold and is now sold to nonresidents at a profit.

Some time ago the plaintiff put up poles and lines outside and within less than three miles of the city boundaries, and the city furnished meters and electricity to persons using these lines under an agreement with the plaintiff; and it is now the purpose of the city to abide by its agreement if the plaintiff's lines are maintained in such way as to enable the defendant to provide reasonable service to its customers.

The plaintiff recently conveyed his transmission lines to the Holmes Electric Company, Inc., and this company soon after the conveyance applied to the Carolina Power and Light Company for the purchase of an electric current for resale or redistribution to persons and corporations within and beyond the three-mile limit. The plaintiff's application was rejected by the Power and Light Company and its subsequent effort to secure from the Superior Court a writ of mandamus to compel an acceptance of its application was denied. *Holmes Electric Co., Inc., v. Carolina Power and Light Co., post,* 766.

The relief sought by plaintiff in this action is a perpetual injunction to restrain the defendant from using its funds to erect and maintain a line for transmitting an electric current to persons, firms, or corporations outside the boundaries of the city. In dissolving the restraining order the judge determined the action upon its merits and rendered a final judgment. *Lutterloh v. Fayetteville,* 149 N. C., 65. This judgment the plaintiff assails on the ground that the defendant has no legal right to engage in a private enterprise beyond its corporate limits and because the act of 1929 purporting to grant the power was enacted in violation of the State and Federal Constitutions.

The plaintiff specifically rests his right to relief on two propositions, the first of which is this: A municipality which is not engaged in the manufacture of electricity, but is supplied an electric current from an electric power company, cannot engage in the business of selling such electric current to inhabitants outside the boundaries, where its activities outside its corporate limits in no way contribute to a fulfilment of its municipal functions or duties to the citizens within its boundaries.

The powers of a municipal corporation are those granted in express words, those necessarily or fairly implied in, or incident to, the powers expressly granted, and those essential to the declared objects and purposes of the corporation. 1 Dillon (5 ed.), sec. 237. The sources of its powers are its charter, special acts, general statutes, and the organic law. 1 McQuillin (2 ed.), 363.

The dual capacity or twofold character possessed by municipal corporations is governmental, public, or political, and proprietary, private, or *quasi*-private. In its governmental capacity a city or town acts as an agency of the State for the better government of those who reside within the corporate limits, and in its private or *quasi*-private capacity it exercises powers and privileges for its own benefit. *Scales v. Winston-Salem,* 189 N. C., 469. "In its proprietary or private character the theory is that the powers are supposed not to be conferred, primarily or chiefly, from considerations connected with the government of the State at large, but for the private advantage of the compact community which is incorporated as a distinct legal personality or corporate individual; and as to such powers, and to the property acquired thereunder, and contracts made with reference thereto, the corporation is to be regarded *quoad hoc* as a private corporation, or at least not public in the sense that the power of the Legislature over it or the rights represented by it, are omnipotent." 1 Dillon (5 ed.), sec. 109, quoted in *Asbury v. Albemarle,* 162 N. C., 247, 253.

The general rule is that a municipal corporation has no extra-territorial powers; but the rule is not without exceptions. The Legislature has undoubted authority to confer upon cities and towns jurisdiction for

sanitary and police purposes in territory contiguous to the corporation. *S. v. Rice,* 158 N. C., 635; *C. P. & P. Co. v. Chicago,* 88 Ill., 221. If a municipality owns and operates a water or lighting plant and has an excess of water or electricity beyond the requirements of the public, which is available for disposal, it may make a sale of such excess to outside consumers as an incident to the proper exercise of its legitimate powers. 3 Dillon (5 ed.), sec. 1300; *Dyer v. City of New Port* (Ky.), 94 S. W., 25; *Muir v. Murray City* (Utah), 186 Pac., 433; *Sibley v. Electric Co.* (Iowa), 187 N. W., 560. The excess may be sold although the city, instead of owning the plant, gets its supply by contract. *Riverside Ry. Co. v. Riverside,* 118 Fed., 736.

In the case before us the record does not disclose the exercise of the police power or the sale of a surplus current. The direct question is whether the defendant is authorized to sell electricity to persons and corporations outside its limits when the electric current is furnished by the Power and Light Company in pursuance of the contract between these parties.

We think there can be no question as to the defendant's right to purchase electricity for its own use and for the use of its inhabitants. Private Laws 1925, ch. 28, Art. 2, sec. 1; Pond on Public Utilities, sec. 54. It is equally clear that without legislative authority the defendant would not be permitted to extend its lines beyond the corporate limits for the purpose of selling electricity to nonresidents of the city. *City of Paris v. Sturgeon,* 110 S. W. (Tex.), 459; *City of Sweetwater v. Hamner,* 259 S. W. (Tex.), 191; *Mayor, etc., v. Dunlap,* 94 S. E. (Ga.), 247; *Mulville v. San Diego,* 192 Pac. (Cal.), 702. This situation presents the two questions whether such legislative authority has been granted and if it has whether the grant is effective in law. The answer to the first is not in doubt. The recent amendment to the defendant's charter provides: "Sec. 4. That said city of Fayetteville be, and it is hereby authorized and empowered, in its discretion, to extend, construct, maintain and operate its water, sewerage, and electric light lines and systems for a distance of not exceeding three miles in all directions beyond the corporate limits of said city as the same now exist or may hereafter be established; and to make reasonable charges for the use of such utilities." Private Laws 1929, ch. 190. At the same session of the General Assembly, C. S., 2807, was amended by authorizing a city to furnish water and lights, not only to its citizens, but "to any person, firm or corporation desiring the same outside the corporate limits where the service is available." Public Laws 1929, ch. 285. Section 2 of this chapter adds to C. S., 2808, the following: *"Provided, however,* that for service supplied outside the corporate limits of the city, the governing

body, board or body having such waterworks or lighting system in charge, may fix a different rate from that charged within the corporate limits, with the same exemption from liability by the city or town as is contained in section two thousand eight hundred and seven."

Now, as to the second question. The Constitution requires the Legislature to provide by general laws for the organization of cities, towns, and incorporated villages. Art. VIII, sec. 4. In *Perry v. Commissioners,* 148 N. C., 521, it is suggested that by inadvertence this section was given an improper placing in Article VIII instead of Article VII; but without regard to its place in the Constitution the section contains, not only a grant of power to the Legislature, but the imposition of a duty to provide by general laws for the organization of municipal corporations. It has often been said that such corporations are mere instrumentalities of the State for the more convenient administration of local government. They are creatures of the Legislature, public in their nature, subject to its control, and have only such powers as it may confer. These powers may be changed, modified, diminished, or enlarged, and, subject to constitutional limitations, conferred at the legislative will. There is no contract between the State and the public that a municipal charter shall not at all times be subject to the direction and control of the body by which it is granted. *Wood v. Oxford,* 97 N. C., 228; *Lilly v. Taylor,* 88 N. C., 490; *Wharton v. Greensboro,* 146 N. C., 356; *Lutterloh v. Fayetteville, supra; Cabe v. Board of Aldermen,* 185 N. C., 158; *Martin v. Greensboro,* 193 N. C., 573.

The Constitution prohibits a city from contracting any debt, pledging its faith, loaning its credit, or levying any tax, except for necessary expenses, unless by the vote of a majority of the qualified voters. Article VII, section 7. The voters have not given their approval to the proposed enterprise; but the city does not purpose to disregard either of these constitutional inhibitions. It intends to use only such available funds as it has, and such as it will receive as the profits of the business. This course was pursued in the erection of a building in the city of Durham and was approved by this Court; but the auditorium was in the city and was intended for a public purpose. *Adams v. Durham,* 189 N. C., 232. In *Briggs v. City of Raleigh,* 195 N. C., 223, it was held that a State fair is a public undertaking and that a donation out of the funds of the city, approved by a majority of the qualified voters, could lawfully be made for retaining the fair outside the corporate limits, but within the vicinity of the city.

Neither of these cases is decisive of the present appeal. The defendant contends that as the Constitution confers upon the General Assembly power to provide by general laws for the organization of cities, towns,

and villages, the legislative branch of the government may grant munici-
pal corporations any powers which promote the welfare of the public
and the communities in which they are established, unless prohibited by
the organic law. The controlling principle is that the exercise of powers
for the private advantage of a city is subject to the same rules that
govern individuals and private corporations, and that the courts will not
interfere with the power to contract, especially when expressly conferred,
unless it contravenes some fundamental principle or conflicts in some
way with the organic law. 43 C. J., 235, sec. 233; *Henderson v. Young,*
83 S. W. (Ky.), 583; *Coldwater v. Tucker,* 24 A. R. (Mich.), 601;
*Pittsburgh v. Bruce,* 27 At. (Penn.), 854. The contract between the de-
fendant and the Power and Light Company, is limited in point of dura-
tion; and under its terms light can be furnished only by the defendant to
those within the three-mile zone.

The appellant's second proposition is this: The Legislature of North
Carolina cannot, by special act, constitutionally confer upon the city of
Fayetteville the power to extend its electric power lines beyond its cor-
porate limits and to furnish electricity to inhabitants beyond the terri-
tory embraced in these boundaries.

It is contended that the act amending the charter of the defendant is
in violation of Article VIII, section 1, of the Constitution: "No corpora-
tion shall be created nor shall its charter be extended, altered, or amended
by special act, except corporations for charitable, educational, penal, or
reformatory purposes that are to be and remain under the patronage
and control of the State; but the General Assembly shall provide by
general laws for the chartering and organization of all corporations and
for amending, extending, and forfeiture of all charters, except those
above permitted by special act. All such general laws and special acts
may be altered from time to time or repealed, and the General Assembly
may at any time by special act repeal the charter of any corporation."

It has been held that this section applies only to private or business
corporations and not to those of a public or *quasi*-public nature, such as
cities, towns, and counties. *Kornegay v. Goldsboro,* 180 N. C., 441. A
municipality furnishing water or light renders service for a public pur-
pose, and the fact that the water or service is furnished for individual
consumption or the use of the inhabitants does not detract from the
public service. Private purposes may be served incidentally, but this
does not destroy the public character of the corporation or municipality.
3 Dillon (5 ed.), sec. 1300. Even if the amendment be construed as a
private act the appellant's objection would not be fatal to the defendant's
position for the reason that the Legislature has enacted general statutes,
applicable to all cities and towns, which in effect confer the same powers
given by the amendment to the charter.

In our opinion neither the amendment to the charter of the city nor the statutes amending the general laws to which we have referred are in conflict with the Fourteenth Amendment of the Federal Constitution, upon the facts appearing in the record, in that, by means of levying a tax, the taxpayer's money and property will be taken from him and applied to purposes outside the city limits. The theory on which the defendant's action is based is not that of taxing the inhabitants of the city for extra-territorial purposes, but the maintenance of its lines beyond the corporate limits out of the profits arising from the business within the three-mile limit. If the defendant should attempt to pledge the faith of the city or to contract a debt or to levy a tax for an enterprise conducted within the designated territory, the taxpayer would have ample remedy; but so long as the defendant's action is not in breach of any constitutional provision we do not perceive why it may not be justified by legislative sanction. The judgment is

Affirmed.